Kevin D. JACOBS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–182A14.

Court of Appeals of Indiana,
Second District.

June 28, 1982.

Dale K. Little, Steven J. Moss, Butler, Brown, Hahn & Little, P. C., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Kevin D. Jacobs (Jacobs) appeals his conviction for armed robbery,[1] challenging the trial court's denial of his motion for continuance.

We affirm.

## FACTS

The record discloses that on February 17, 1981, Jacobs and Jack Branam (Branam) met in a lounge at the Dearborn Hotel in Indianapolis. After a brief conversation, Jacobs suggested that Branam accompany him "to go see a couple of girls." *Record* at 119. The men set out in Jacobs' car, stopping at two houses in the general vicinity of the hotel. Finding no one at home, Jacobs drove Branam to a carry-out food restaurant and then proceeded back to the Dearborn Hotel, but did not return to the lounge. In an alley behind the hotel, Jacobs suddenly drew out a knife, held it to Branam's throat, and robbed Branam of three to five hundred dollars in cash, a watch, and a ring. At trial, Jacobs admitted being with Branam on February 17, but denied the robbery.

During Jacobs' jury trial, defense counsel moved for a continuance because of newly discovered evidence. It was stipulated that the prosecution had on that day delivered to defense counsel a letter written by Branam which described in detail the events concerning the robbery on February 17. Defense counsel argued that the statement contained in the letter varied substantially from that given to police on the day of the robbery and that the letter described several possible witnesses to the meeting of Branam and Jacobs at the Dearborn Hotel.

Furthermore, defense counsel argued, the letter provided possible exculpatory evidence: A conversation referred to in Branam's letter indicated that the Dearborn Hotel bartender had seen the man who robbed Branam in jail after Jacobs' arrest.[2] The motion for continuance was denied and forms the basis for Jacobs' appeal.

## ISSUE

One issue is addressed:[3]

Did the trial court err in denying Jacobs' motion for continuance?

## DECISION

CONCLUSION—The motion for continuance was properly denied.

An appropriate remedy for the State's late compliance with a discovery order is a continuance to compensate for surprise and to permit the aggrieved party time to prepare a proper defense. *Popplewell v. State*, (1978) 269 Ind. 323, 381 N.E.2d 79; *Owens v. State*, (1975) 263 Ind. 487, 333 N.E.2d 745; *Butler v. State*, (1978) Ind.App., 372 N.E.2d 190. However, granting continuances in order to allow more time for preparation is generally not favored in criminal cases without a showing of good cause. *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d 1168; *Miller v. State*, (1971) 256 Ind. 296, 268 N.E.2d 299. Whether good cause has been shown rests within the sound discretion of the trial judge, and in order to demonstrate an abuse of that discretion the record must reveal that the defendant was prejudiced and was not at fault. *Hooks v. State*, (1977) 266 Ind. 678, 366 N.E.2d 645; *White v. State*, (1975) 263 Ind. 302, 330 N.E.2d 84.

There is no question that Jacobs was surprised by the discovery of Branam's let-

---

1. IC 35–42–5–1.

2. The letter reads in pertinent part:
   —By the way the next day I was down in the bar and this bartender said I saw the guy who robbed you down town [sic] last night in jail. Said he got picked up for somethings [sic] drugs I think, I said what did he say,— he said he's not talking.
   *Record* at 150.

3. Because we find that the motion for continuance was properly denied, we need not address Jacobs' argument that the trial court erred in denying his motion for mistrial based upon the denial of a continuance. Moreover, we observe that Jacobs has failed to cite any authority for his argument on the mistrial. The issue is therefore waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

ter on the day of trial. However, even with a showing of surprise, there must be a showing that the defendant was harmed by denial of the motion for continuance. *Hardin v. State*, (1981) Ind., 414 N.E.2d 570; *King v. State*, (1973) 260 Ind. 422, 296 N.E.2d 113. Jacobs has failed to demonstrate prejudice.

■ As to the "substantial variation" between the contents of Branam's letter and his statements to the police on the day of the robbery, Jacobs has failed to demonstrate how a continuance would have led to the resolution of any inconsistencies. Furthermore, we observe that the letter was available for impeachment purposes during cross-examination of Branam. *Record* at 170. Defense counsel's failure to pursue this method of attacking Branam's credibility supports our conclusion that little, if any, variation existed between the letter, Branam's police report, and his testimony.

As for Jacobs' argument that Branam's letter for the first time stated that there were possible witnesses to the meeting between Branam and Jacobs in the Dearborn Hotel lounge, there was no controversy as to the events that took place up until some time *after* the two gentlemen had left the bar. We fail to see how additional time to find those witnesses would have aided Jacobs in his defense.

The State aptly points out that defense counsel had ample opportunity before trial to discover and interview any possible witnesses that might have shed light on the events of February 17. This reasoning holds true for Jacobs' desire to interview the hotel bartender as well because, as indicated by defense counsel, it was "certainly rather easy to find out who the bartender was." *Record* at 142. And, there is no reason to assume that interviewing the bartender would have produced exculpatory evidence—there is nothing in Branam's letter to indicate that the bartender was referring to anyone other than Jacobs as Branam's robber.

■ It is significant that Jacobs had sixty days before filing the motion to correct

errors in which to locate the bartender and determine whether he possessed any information as to the identity of Branam's robber. In that sense, we find the rationale of *King v. State, supra,* to be controlling. In *King,* the defendant sought a continuance in order to locate possible witnesses that had been referred to in surprise testimony at trial. One factor relied upon by our supreme court in affirming denial of the motion was, in the words of Chief Justice Givan, that

> following his conviction, the appellant had ample time pending the filing of his motion to correct errors, to locate [the] witnesses, and if their testimony was favorable to him to submit the same by way of affidavit as newly discovered evidence.

260 Ind. at 426, 296 N.E.2d at 115. Jacobs submitted no such affidavit.

For these reasons, we are led to the conclusion that the trial court did not abuse its discretion in denying Jacobs' motion for continuance.

Judgment affirmed.

SULLIVAN, J., concurs.

SHIELDS, J., concurs with separate opinion in which SULLIVAN, J., concurs.

SHIELDS, Judge, concurring.

I concur in the majority opinion. However, because I am at a loss to understand the frequency with which the situation occurs I am compelled to express my concern with the state's failure to comply with the court order and the appearance it engaged in the "sharp" or "shoddy" practice condemned in *Thorne v. State*, (1981) Ind., 429 N.E.2d 644, 647.

On April 16, 1981 the state filed a Notice of Discovery Compliance which stated, in part, it had provided defendant with all relevant written or recorded statements. The Notice further acknowledged the state's continuing duty to comply if counsel learns of any "additional items" subject to discovery. Nevertheless, the letter written by the prosecuting witness to Detective Trather approximately a week after the

February 17, 1981 incident was not provided to the defense until the noon recess on the first day of trial, July 30, 1981.

Again, I remind the prosecution it has an obligation to make a reasonable effort to determine the existence of any material subject to discovery and then to promptly make it available to the defense. *Long v. State*, (1982) Ind.App., 431 N.E.2d 875.

I caution that a strong argument can be made that the frequent and continued neglect or abuse of discovery orders should lead to a reevaluation of the effectiveness of the court's current position that a continuance is a deterrent and an appropriate remedy for failure to comply with a discovery order.

Finally, I reconcile this court's opinion in *Long* with my concurring vote in this case on the basis the prejudicial circumstances surrounding the discovery abuse in *Long* which involved the defendant's own inculpatory statement with the resultant prejudice to Long are not present in this case which involves an innocuous statement by the prosecuting witness involving events outside those which constituted the offense.