Terrance WALKER and Johnny
Hodge, Appellants,

v.

STATE of Indiana, Appellee.

No. 581S141.

Supreme Court of Indiana.

Feb. 2, 1983.

James L. Sullivan, Valparaiso, John S. Diaz, James W. Myers, III, Diaz, Moore & Associates, P.C., Portage, for appellants.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-appellants, Terrance Walker and Johnny Hodge, were convicted of first-degree murder in Porter Superior Court in July, 1978. Their convictions were reversed by this Court because the trial court allowed the jurors to separate after deliberations had begun but before a verdict had been reached. *Walker v. State* (1980) Ind., 410 N.E.2d 1190. Defendants were retried and again found guilty of first-degree murder and sentenced to life imprisonment.

Six errors are raised on appeal, concerning: 1) whether the trial court erred in not conducting an arraignment prior to retrial; 2) whether the trial court erred in denying the motions for continuance; 3) whether the trial court erred in denying the motion for change of venue; 4) whether the trial court erred in denying the motion for mistrial; 5) whether the trial court erred in denying the motions for judgment on the evidence; and, 6) whether the trial court erred in denying defendant Walker's motion for severance and separate trial.

The evidence most favorable to the State revealed that in 1976 Johnny Hodge was the leader of a gang involved in heroin distribution in Gary, Indiana. The gang included co-defendant Walker, Jackie Hicks, Marshall Wilson, and James Bullock. Chief witnesses for the State were Jackie Hicks and Marshall Wilson. Prior to June, 1976, Hodge had ordered the other gang members to find James Bullock because Hodge thought Bullock had been talking to federal agents. Bullock was found on June 2 on a street corner in Gary. While Walker, Hicks, and Wilson went to get something to eat, Hodge first talked with Bullock and then the two men went to Hodge's residence. Walker, Hicks, and Wilson also went to Hodge's residence but remained out of Bullock's sight. While Bullock was still unaware of their presence, the three men were given guns by Hodge and instructed to wait at a nearby filing station until Hodge drove past. When Hodge drove by with Bullock in the car, the other three men followed until they stopped along the road at Hodge's prearranged signal. Bullock was taken out of the car and shot by Walker. He fell but recovered and tried to escape but was eventually overtaken by Hodge and Walker, shot by Hodge, and left to die. The gang returned to Hodge's residence where Hodge collected and disposed of the guns. Bullock was found near some railroad tracks and taken to a hospital where he died of the gunshot wounds.

## I

Defendants claim that the trial court erred in not holding an arraignment prior to their retrial on first-degree murder charges following reversal of their convictions by this Court in their first trial. The State contends that another arraignment was not required after the case had been reversed and furthermore, that the defendants failed to demonstrate prejudice. The only claim of prejudice argued by Defendants is that failure to hold arraignment prevented them from timely filing a motion for change of venue from the judge. We agree with the State's contention that the failure to hold an arraignment did not produce this problem for the defendants.

The time limitations for applying for a change of judge are provided in Ind.R. Crim.P. 12 as follows:

"An application for a change of judge or change of venue from the county shall be filed within ten (10) days after a plea of not guilty, or if a date less than ten (10) days from the date of said plea, the case is set for trial, the application shall be filed within five (5) days after setting the case for trial. Provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten (10) days after the party has knowledge that the cause is ready to be set for trial."

Pursuant to the clear provisions of the rule, Defendants had an opportunity to apply for change of judge within ten (10) days after they had knowledge that the cause was ready to be set for trial. The failure to hold another arraignment therefore did not contribute to any prejudice as the time limitations under Criminal Rule 12, under which the defendants could apply for the change, did not relate in any way to the holding of an arraignment. The purpose of an arraignment is to give notice to the accused of the charges being brought against him and to permit him to enter a plea. See Ind.Code § 35–4.1–1–1 (Burns Repl.1979) (now repealed); Rader v. State (1979) Ind.App., 393 N.E.2d 199. Defendants are correct that there must be an arraignment before trial and the cases they cite supporting their position do state such rule; however, those cases relate to an original trial following the formal filing of charges against the defendant. Here, the defendants had already been arraigned and had entered a plea of not guilty to the charges. The same charges were on file for the second trial and their pleas of not guilty were in the record. There was, therefore, no prejudice to these defendants in the failure of the court to re-arraign them and more particularly the lack of arraignment did not contribute to the failure of their efforts to obtain a change of judge. There is no error on this issue.

## II

■ On October 31, 1980, an omnibus hearing was held at which time the trial court set this cause for trial on the 10th day of December, 1980. This date was later changed to December 17th, 1980. Defendants filed several verified motions for continuance on November 6, November 26, December 8, December 10, and December 11. The basis of each of the motions was that counsel did not have sufficient time to prepare for trial and claimed the Sixth Amendment right to competent counsel under the United States Constitution would be violated by forcing them to proceed to trial on December 17. In support of the motion filed on November 26, Defendants called several local criminal attorneys who testified that seven weeks was not adequate time to prepare for this type of trial. The trial court denied all of the motions for continuance and the cause went to trial on December 17, 1980. Computation of time shows that Defendants' counsel had a period of seven weeks to prepare for trial.

We recently addressed the subject of continuances in *Downer v. State* (1982) Ind., 429 N.E.2d 953, 954, as follows:

"Continuances are granted under the authority of Indiana Trial Rule 53.4. Where the request is based on a nonstatutory ground, as here, the granting of the motion is within the discretion of the trial court. Denial of the motion is reversible error only where there has been a clear abuse of that discretion. *Aron v. State,* (1979) Ind., 393 N.E.2d 157; *Johnson v. State,* (1979) Ind., 390 N.E.2d 1005, U.S. *cert. denied* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312; *Miller v. State,* (1978) 267 Ind. 635, 372 N.E.2d 1168. In order to demonstrate an abuse of that discretion, the appellant must show he suffered prejudice as a result of the denial of the continuance. *Schalkle v. State,* (1979) Ind., 396 N.E.2d 384; *Vaughn v. State,* (1978) 269 Ind. 142, 378 N.E.2d 859. The trial court is not required to grant a motion for continuance merely because it complies with the rules of procedure but may look to the circumstances of the case as well as the allegations made in the motion. *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228; *Keys v. State,* (1979) Ind., 390 N.E.2d 148; *Miller, supra.* Continuances to allow more time for preparation are not favored and should be granted only with a showing of good cause and in furtherance of justice. *Keys, supra; Miller, supra.*"

The record shows that the State's case on retrial was composed of the same witnesses as in the first trial with the addition of Jackie Hicks. The record and transcript of the first trial together with depositions of several witnesses were made available to the defendants. Defendants do not claim they were unable to interview their witnesses and they, of course, had a transcript of the testimony of all the State's witnesses in the first trial. The first trial had taken three days to try and it did not appear that a retrial would take any longer. There is no allegation that evidence was not presented due to the need for additional time to prepare nor that any real prejudice attached to these defendants because they were forced to trial on December 17, 1980. The record shows that the witnesses were thoroughly cross-examined, defense witnesses were presented, counsel were well aware of the facts of the case, and more than adequately presented their defenses. There is no showing that the trial court abused its discretion by denying the motions for continuance.

## III

■■ Defendants claim the trial court erred in not granting motions for change of venue from the county or continuances due to pretrial publicity concerning defendant Hodge. At the hearing on the motion for change of venue from the county, Defendants presented evidence concerning a series of newspaper articles in which defendant Hodge was discussed. There were articles in a local newspaper on November 23, 24, and 25, 1980, concerning Gilda Davis Smith, an inmate in the Indiana Women's Prison, which discussed her conviction for two murders and referred to Johnny Hodge as "a Gary hoodlum" and an underworld leader,

calling him a successor to the infamous "Family Gang." The State's position was that the evidence presented on a motion for change of venue was insufficient to establish community bias which would demonstrate that the defendants could not receive a fair trial in Porter County. In addition to demonstrating the existence of adverse publicity, it was incumbent upon the defendants to establish that the potential jurors were unable to set aside their preconceived notions of guilt and to render a verdict based upon the evidence. *Sage v. State* (1981) Ind., 419 N.E.2d 1286, 1287; *Drollinger v. State* (1980) Ind., 408 N.E.2d 1228, 1235. Even if potential jurors had been exposed to pretrial publicity concerning the defendants' case that alone is insufficient to establish prejudice unless it is also demonstrated that the jurors were unable to set aside any preconceived notions they might have had. *Pine v. State* (1980) Ind., 408 N.E.2d 1271. The transcript of the voir dire did not indicate that the potential jurors were exposed to the publicity and those who were indicated that they would be able to judge the case on the evidence presented and did not have preconceived notions of guilt or innocence. Those jurors overly exposed to publicity were challenged for cause and excused by the trial court. Thus it did not appear that the jurors selected to hear the defendants' case were biased by any of the publicity. Defendants do not show that during the voir dire of the jury they exhausted all their peremptory challenges. The only showing in the record is that ten jurors were excused peremptorily but there is no showing which side made the challenges. Defendants do not claim that their peremptory challenges were exhausted in order to secure juror impartiality. *Hopkins v. State* (1981) Ind., 429 N.E.2d 631; *Pine v. State, supra.* Defendants not having demonstrated any bias or unfairness in the jurors who heard this case, we find no error in the denial of the motion for change of venue from the county or for continuances based on pretrial publicity.

## IV

Defendants next claim the trial court erred in denying their motion for mistrial during the testimony of State's witness, Officer Robert Cash. Officer Cash testified with respect to his investigation of the case, including conversations with Marshall Wilson and investigation of the crime scene. During Sergeant Cash's direct examination, the following took place:

"Q. Sergeant Cash, you've been sitting by my right-hand side during this entire trial, is that correct?

A. Yes, I have.

Q. And sitting to your right has been Mr. Diaz and to your right behind you is Johnny Hodge?

A. Yes, sir.

Q. Have you had occasion to say anything to Johnny Hodge during this trial?

A. No, sir, I've not.

Q. Has he had occasion to say anything to you?

A. Yeah, the first day—today he hasn't, but the first day, pretty dirty words yesterday.

MR. DIAZ: I'm going to object to that, that is beyond the scope of the issues which we are trying here. Any conversations that occurred between them has no relevancy in this trial.

MR. BERNING: May I respond, Your Honor? ..., I'm talking about comments from this defendant to this officer in Open Court, demeanor in Court, the way he's acting in Court. Mr. Diaz can't say any reason why this isn't relevant. It is relevant, and he's got no objection to make, I haven't heard any. It's important to the jury to know how this guy is acting in Court.

THE COURT: I'll sustain the objection. I haven't heard any comments, and what I consider Open court is what I am able to hear and the jury can hear. The jury can observe the demeanor of Mr. Hodge and the Officer."

There followed objections from counsel for both defendants and motions for mistrial, the defendants claiming that the question and answer was uncalled for, was in-

tended for a prosecutorial harpoon and was irrelevant. The trial court judge responded that he felt the question and answer contained subject matter that was irrelevant but he felt the prosecutor asked the question in good faith and he felt that no harm had been done since he sustained objection to the testimony and directed that the questioning on that subject not be pursued further. The judge then stated to the parties that he thought everyone was getting tired, that it was late in the day and that he felt it would be a good idea to recess until the next morning. He then admonished the jurors not to discuss any of the evidence they had heard to that point and not to gain any information on events of the trial outside of the courtroom from newspaper articles, television or other sources. The next morning, defendants filed a written motion for mistrial. When the trial judge opened proceedings the next morning, the first thing he did was admonish the jury in the following manner:

THE COURT: Please be seated. At the close of yesterday, there was some motion for a mistrial and an objection to the question asked of the witness, which the Court has sustained the objection by the defense counsel, Mr. Diaz and Mr. Hubbell, concerning some comments made by one of the defendants to the particular witness. The Court would at this time request and direct the jury disregard the remarks of counsel, which those remarks were not evidence, and disregard the question that was asked by the Chief Deputy Prosecutor, Mr. Berning, disregard the answer that was given by Officer Cash to the question. Now, the remarks, the Court has ruled, are not proper evidence in this particular case. So with that admonishment, I think we can go ahead and proceed, Mr. Berning, with Officer Cash."

The State contends that this was an isolated instance of alleged misconduct and that any prejudice caused by the prosecutor's question and the answer obtained from the police officer was alleviated by the court's admonishment to the jury. It is well settled that the granting of a mistrial lies within the sound discretion of the trial court and its determination will be reversed only where an abuse of that discretion can be established. If a jury is admonished by the trial court to disregard what has occurred at trial or if other reasonable curative measures are taken, no reversible error will ordinarily be found. *Ramos v. State* (1982) Ind., 433 N.E.2d 757, 759; *Page v. State* (1980) Ind., 410 N.E.2d 1304, 1307; *Abrams v. State* (1980) Ind., 403 N.E.2d 345, 348; *Blackburn v. State* (1979) Ind., 390 N.E.2d 653, 657. The granting of a motion for mistrial is proper only where, under all the circumstances, the defendant has been placed in a position of grave peril to which he should not have been subjected. *Tinnin v. State* (1981) Ind., 416 N.E.2d 116, 118; *Carman v. State* (1979) Ind., 396 N.E.2d 344, 347. Here, the officer testified that the defendant, Hodge, had directed some "dirty words" toward him while they were sitting in the courtroom. The court immediately sustained the objection to the line of questioning and ordered that it not be pursued further. Furthermore, the trial judge admonished the jury to disregard the question and answer and instructed the jury that it was not evidence and was not relevant to the cause. We tend to agree with the trial judge that the question and answer did not place the defendant in such grave peril that the admonishment by the court would fail to cure it, necessitating the granting of a mistrial. In view of the circumstances in this trial, where eyewitnesses testified to the perpetration of the killing of the victim by these two defendants and the otherwise strong evidence presented by the State, the testimony that the defendant was misbehaving in court by directing dirty words toward the State's witness, could not be of such a grave nature that a mistrial was necessary. The trial court properly cured any possible prejudice to the defendants and we find no error on this issue.

V

Both defendants Hodge and Walker claim the trial court erred in denying their motions for directed verdict at the

close of the State's case-in-chief. The record shows, however, that both defendants offered evidence in their defense; therefore, any error in the overruling of the motions for directed verdict has been waived. *Vacendak v. State* (1982) Ind., 431 N.E.2d 100, 103; *Sanders v. State* (1981) Ind., 428 N.E.2d 23, 27; *Miller v. State* (1978) 267 Ind. 635, 640, 372 N.E.2d 1168, 1171. Both defendants also claim that the trial court should have granted judgment on the evidence at the close of all the evidence but the record shows no motion was filed by either defendant at the close of the evidence. This issue was not presented to the trial court and the defendants' contentions must fail. *Widner v. State* (1979) Ind.App., 391 N.E.2d 1199, 1201.

■■■■ Moreover, it appears that sufficient evidence was presented by the State to satisfy its burden of proving guilt beyond a reasonable doubt, thereby justifying the trial court's decision in denying any motion for judgment on the evidence. Defendants apparently attempt to make a sufficiency argument, urging that witnesses Wilson and Hicks were not credible witnesses because there was conflict in their testimony. This, of course, is an attempt to have this Court reweigh the evidence and determine the credibility of the witnesses, which we will not do. *Drollinger v. State* (1980) Ind., 408 N.E.2d 1228, 1242; *Ashbaugh v. State* (1980) Ind., 400 N.E.2d 767, 775. In dealing with sufficiency of the evidence arguments we consider only that evidence which is most favorable to the State, together with all the reasonable and logical inferences to be drawn therefrom. *McCollum v. State* (1980) Ind., 413 N.E.2d 912, 913; *Charlton v. State* (1980) Ind., 408 N.E.2d 1248, 1249. There was ample evidence presented by the State to justify the jury's finding that the defendants were guilty beyond a reasonable doubt. The facts of this case were set out above and the defendants' attack upon the credibility of certain of the State's witnesses does not demonstrate insufficient evidence. The jury judges the credibility of the witnesses. *Lawson v. State* (1980) Ind., 412 N.E.2d 759, 769, U.S. *cert. denied* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424;

*James v. State* (1980) Ind., 411 N.E.2d 618, 622. There is no error on this issue.

## VI

■■ On November 17, 1980, defendant Walker filed Motion for Severance and for Separate Trial. In this motion, Walker claimed he did not know if his co-defendant, Johnny Hodge, would take the stand but that if Hodge did testify it would prejudice Walker because the State could then present Hodge's prior convictions to the jury. This Motion was denied. During trial, and on December 19, 1980, defendant Walker filed a Renewed Motion for Severance and for Separate Trial, claiming he would be prejudiced in continuing to be tried jointly with Hodge because the prosecutor had improperly referred before the jury that defendant Hodge had called a police officer foul names in the courtroom during the trial proceedings. This motion was also denied. On appeal, defendant Walker primarily argues that it was error to deny his motions for severance and for separate trial due to the fact that the evidence presented was primarily against defendant Hodge and portrayed Hodge as the leader of a narcotics distribution gang and that thereby Walker was prejudiced by his association with Hodge before the same jury.

Defendant's argument on appeal is based upon reasons substantially different than those presented in his motion at trial. Walker originally alleged prejudice if Hodge took the stand and testified as to his prior convictions. His second motion argued prejudice because of the alleged prosecutorial harpoon directed at Hodge in the courtroom. Defendant's argument, however, is premised upon the statutory provision, Ind.Code § 35–3.1–1–11 (Burns Repl. 1979) (now repealed), regarding severance which provides in part:

"In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a

defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

Defendant Walker's complaint that the evidence presented at trial showing defendant Hodge to be an unsavory individual and that Hodge's character prejudiced the jury against him due to their association at trial, is insufficient to demonstrate prejudice to Walker's ability to receive a fair trial. Defendant Walker concedes the following standard of review:

"The decision to grant or deny a motion for separate trial is within the sound discretion of the trial court. *Taggart v. State* (1979) Ind., 390 N.E.2d 657; *Gutierrez v. State* (1979) Ind., 386 N.E.2d 1207. Defendant must show on appeal that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court may be said to have abused its discretion in refusing to grant his motion for severance. *Gutierrez v. State* (1979) Ind., 395 N.E.2d 218; *Ortiz v. State* (1976) 265 Ind. 549, 356 N.E.2d 1188."

*Chandler v. State* (1981) Ind., 419 N.E.2d 142 at 149. The issue was well stated by the Court of Appeals in *Johnson v. State* (1981) Ind.App., 423 N.E.2d 623, 629, when the court held:

"The trial court's decision to grant separate trials under IC 1971, 35–3.1–1–11(b) is reviewable only for abuse of discretion. *Ortiz, Williams v. State,* (1976) 265 Ind. 549, 356 N.E.2d 1188. Whether the trial court abused its discretion is determined by reference to what actually transpired at trial and not what was alleged in the motion. *Ortiz, Williams, supra; Garrison v. State* (1967) 249 Ind. 206, 231 N.E.2d 243. A defendant is not entitled to a separate trial as a matter of right merely because damaging evidence of the actions of a co-defendant reflects, by implication, on her, since there is no constitutional right to be protected from damaging evidence. *Frith; Williams v. State* (1975) 263 Ind. 100, 325 N.E.2d 186. The trial court does not abuse its discretion in re-

fusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. *Henry; Davis v. State* (1978) 269 Ind. 1, 379 N.E.2d 132."

The trial transcript here demonstrates that the evidence presented distinct roles and actions for each defendant. The jury would not have been confused by the evidence as to what defendant Walker did in the commission of the crime charged. The evidence was such that the jury could determine defendant Walker's guilt wholly apart from his association with Hodge. The trial court did not abuse its discretion in denying defendant Walker's motions for separate trial.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.