Dennis MASON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 18A02–8605–CR–174.

Court of Appeals of Indiana,
Second District.

Aug. 11, 1987.

Rehearing Denied Oct. 9, 1987.

Donald H. Dunnuck, Dunnuck and Teagle, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Dennis Mason appeals his conviction of child molesting, a class C felony. Ind.Code Ann. § 35–42–4–3(b) (Burns Repl.1985).

The evidence is Mason fondled S.J., a seven year old female, on April 20, 1984, as charged in the information. There is also evidence Mason fondled S.J. on other occasions and, in addition, fondled M.S., as a seven year old female, and S.K., as a six or seven year old female, acts for which Mason was not charged.

Mason raises several issues on appeal:

1. Is the rape shield law applicable to prosecution evidence of uncharged sexual conduct between the defendant and the complaining witness and other victims?

2. Did the trial court err in refusing to allow Mason to cross-examine witnesses called by the State at its offer to prove hearing?

3. Did the trial court err in denying Mason leave to depose certain prosecution witnesses?

4. Did the trial court err in sustaining the State's objections to Mason's leading questions?

5. Did the trial court err in failing to admonish the jury to disregard a misstatement of the evidence made by the State during its closing argument?

6. Did the State impermissibly seek to elicit testimony concerning Mason's willingness to submit to a polygraph examination?

7. Did the trial court err in excluding Mason's reputation evidence?

We affirm.

On December 10, 1985 Mason filed a Motion in Limine in which Mason sought to prohibit the State, at trial, from offering evidence of acts of sexual conduct with which he was not charged in the instant prosecution. On December 12, 1985 the trial court granted the motion on the basis the State had failed to comply with Ind. Code Ann. § 35–37–4–4(c)(1) (Burns Repl. 1985).[1]

*Voir dire* commenced on December 16, 1985 and continued to the 17th. However, during the second day of *voir dire* the jury panel was exhausted and the court continued the cause until January 13, 1986. On December 18, 1985 the State filed a Motion for Offer of Proof which was set for hearing on January 2, 1986. After that hearing the trial court vacated its December 12, 1985 ruling on Mason's Motion in Limine.

At the hearing on the State's Motion for Offer of Proof, the State elicited testimony from S.K., M.S., and S.J., as to uncharged acts of sexual conduct with Mason. After the examination of these witnesses by the State, Mason sought, but was denied, the right to cross-examine the witnesses. The trial court also sustained the State's objections to Mason's Notices of Deposition of S.K. and S.J. for January 7, 1986, filed the date of the hearing, January 2, 1986.

At trial, the trial court overruled Mason's objections to the testimony of S.K., M.S. and S.J., the prosecuting witness, concerning uncharged acts of sexual conduct with Mason.

### I.

On appeal, Mason argues the admission of evidence of his uncharged sexual conduct with S.K., M.S. and S.J. was erroneous due to the State's failure to comply with I.C. § 35–37–4–4(c)(1). Specifically, he contends the trial commenced December 16, 1985 and, therefore, the State's attempted compliance on December 18, 1985 was untimely. The State, citing *Brackens v. State* (1985), Ind., 480 N.E.2d 536, argues the rape shield law does not apply to evidence of uncharged sexual conduct involving the defendant.

■ The trial court did not err because the rape shield act is inapplicable to evidence of uncharged sexual conduct on the part of the defendant. A similar argument was made in *Knisley v. State* (1985), Ind. App., 474 N.E.2d 513. Knisley claimed the trial court erred in admitting evidence of his sexual history with the prosecuting witness and a third party. He argued IC 35–37–4–4 prohibits such evidence because "introduction of his history is also introduction of their history; because they were witnesses, their sexual history is excluded by the statute." This court rejected Knisley's argument.

"Knisley's interpretation of this statute would violate legislative intent in this area. This statute was designed to protect witnesses as well as victims, not to provide a defense for the accused. Here, the testimony [of the third party] concerned her sexual experiences with the accused. The intent of the Rape Shield statute is to protect those who testify on some matter in such cases from having their entire sexual history exposed to the

1. Ind.Code Ann. § 35–37–4–4(c)(1) reads:
"The defendant or the state shall file a written motion not less than (10) days before trial stating that it has an offer of proof concerning evidence described in subsection (b) and its relevancy to the case. This motion shall be accompanied by an affidavit in which the offer of proof is stated."

jury as an impeachment tool. When permitted in the past, the real focus of the trial became diffused as to the trial's emphasis shifted from the accused's sexual conduct to that of the victim or a witness. Limitation of this diffusion is the purpose of the Rape Shield statute."

*Knisley,* 474 N.E.2d at 515 (citations omitted).

Because the rape shield statute is inapplicable to the State's evidence of Mason's uncharged sexual conduct with the prosecuting witness and other victims, it is axiomatic the State was not obligated to comply with the statutory procedures. Accordingly, the trial court did not err in failing to exclude the evidence on that basis.

## II.

So, too, the trial court did not commit reversible error in refusing Mason leave to cross-examine the witnesses, S.J., M.S. and S.K., called by the State at the offer to prove hearing conducted pursuant to the statute. Because the statute is inapplicable the hearing is surplusage and Mason's inability to cross-examine the witnesses cannot constitute prejudicial, reversible error.

## III.

After the trial court ruled the evidence of Mason's conduct with the complaining witness and other victims was not excluded by the rape shield law, the trial court denied Mason leave to depose S.K. and S.J. Based upon *Murphy v. State* (1976), 265 Ind. 116, 352 N.E.2d 479, Mason claims this ruling constituted reversible error.

Murphy was arraigned on a charge of armed robbery on February 11, 1975, and trial was set for April 7, 1975. Substitute counsel appeared on March 26, 1975 and obtained a new trial date of April 28, 1975. On April 7, 1975, Murphy filed a motion to depose certain of the State's witnesses at public expense. The motion was denied April 22, 1975. In reversing the trial court's ruling, our supreme court stated:

"Absent a showing that the defendant had no legitimate defense interest in support of his petition or that the State had

a paramount interest to protect, criminal defendants have a right under our statute and rules of procedure to discovery, including the taking of depositions from those persons listed as state witnesses."

*Murphy,* 352 N.E.2d at 481–82.

However, in *Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116 our supreme court held the defendant's right to discovery is further subject to the trial court's inherent power to issue orders to prevent the use of discovery from unjustifiably delaying the proceedings:

"The granting of the discovery motion is subject to the limited discretion of the trial court. However, it is also true that the trial court has inherent power to issue orders which are necessary to prevent the use of discovery from unjustifiably delaying the proceedings."

*Tinnin,* 416 N.E.2d at 118 (citations omitted). Accordingly, in *Tinnin,* the supreme court affirmed the trial court's refusal to grant the defendant leave to depose a police officer, at public expense, as "untimely filed." The request had been made ten (10) days prior to trial and over a year after his first attorney entered his appearance.

Similar circumstances exist here. Mason's original counsel entered his appearance on May 16, 1984. Mason filed a Motion to Produce on May 18, 1984 to which the State immediately responded. The response included a list of witnesses on which the names of S.K., M.S. and S.J. appeared as well as copies of written statements made by these persons. On October 11, 1984, a substitute attorney appeared on Mason's behalf. However, a pretrial conference was held on February 7, 1985 at which time the parties advised all discovery was completed.

Mason knew, for over a year and one-half before his trial, that S.J., S.K. and M.S. were prospective witnesses for the State. In addition, because he had been provided copies of their written statements reporting uncharged acts of sexual conduct, he was aware of the nature of their testimony for that same year and a half. Nevertheless, Mason failed to make any

effort to depose any of these young people. Instead, a mere six days prior to the trial date, Mason filed a Motion in Limine attempting to exclude the testimony of S.J., S.K. and M.S. concerning uncharged sexual conduct with Mason.

Mason, without citing *Tinnin,* attempts to avoid its application to his less than diligent conduct by arguing the trial court's initial ruling sustaining his Motion in Limine prompted him to refrain from earlier deposing the three young girls. However, his reliance upon the trial court's ruling is misplaced for three reasons. First is his lack of diligence in filing his Motion in Limine. Second is the nature of a motion in limine. A ruling on a motion in limine is, in essence, an advisory opinion from the trial court. Competent counsel must be aware the trial court may "change" its advisory ruling at the time the evidence is offered in evidence at trial (as it must be to preserve any question for appeal) for any number of reasons including anticipated evidence which renders the advisory ruling incorrect or, as here, the trial court's determination its advisory ruling is incorrect. Hence, a trial court's ruling on a motion in limine is not a sound basis for counsel to refrain from undertaking to depose potential witness. Third, in this case, prior to the trial court's ruling, it held a hearing on the State's Motion for Offer to Prove. At this hearing, at which Mason and his counsel were present, S.K., M.S., and S.J. were interrogated at length concerning Mason's uncharged sexual conduct with them. Therefore, Mason was not surprised by their testimony inasmuch as he was present at the hearing and had copies of their written statements, both of which encompassed the subject of their trial testimony.

■ Considering Mason's lack of diligence in seeking to depose S.J., S.K. and M.S., the ephemeral nature of a ruling on a motion in limine, the testimony produced at the offer to prove hearing, and the content

of the produced statements, the trial court did not abuse its limited discretion in denying Mason leave to depose S.J., S.K. and M.S.[2]

## IV.

■ Mason next claims the trial court erred in sustaining the State's objection to questions he propounded to a State's witness on cross-examination on the grounds the questions were leading. There is no reversible error.

The first instance of which Mason complains occurred as follows:

"Q. O.K. And did you, did you go in the truck with Sherry?

MS. NAVE: Your Honor, he's leading this witness and I would object to that.

A. Yes.

THE COURT: All right. The objection to the leading nature of the questions.

MR. DUNNUCK: Judge—.

THE COURT: Is made. I understand the age of the child, but then let's, let's not lead quite so much."

Record at 1801.

Here there is no reversible error because the witness answered the question to which the State objected.

The second situation is similar.

"Q. Was that a party or a cookout?

MS. NAVE: Your Honor, I believe that Mr. Dunnuck is testifying when he's volunteering alternatives, neither of which this witness has ever even mentioned. Would ask that he simply ask questions and elicit testimony.

MR. DUNNUCK: I'd like to find out when it is, Judge.

THE COURT: All right. But let's be a little more inhibited in our questions."

Record at 1851. Again, the witness answered the question.

"Q. Do you remember when it was that big Sher—, that little Misha rode the unicycle?

**2.** Mason may also be claiming error arising from the change in ruling on his Motion in Limine in that the trial court only granted him but one additional pre-emptory challenge when voir dire resumed on January 13, 1986. How-

ever, if he is, the error is waived by the lack of a cogent argument supported by legal authority. Ind.Rule of Appellate Procedure 8.3(A)(7); *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1123.

A. It was, I believe it was at the cook-out when we, when, when we came."

*Id.*

## V.

Mason also claims the trial court erred when it failed to instruct the jury to disregard the State's misstatement of a witness's testimony during its final argument.

During argument the State, in referring to the testimony of Dr. Mahannah, a witness called by Mason, stated:

"When asked whether he'd ever talked to the defendant, he said he had. And sometime after he talked with the defendant, it was only then that he talked with the defendant's attorney. Why is it when he's given the responsibility to examine a child—?

MR. DUNNUCK: I'm going to object, Judge. There is no evidence that the doctor ever talked to the defendant.

MS. NAVE: He said he did.

MR. DUNNUCK: Not one shred of evidence that the doctor ever had any conversations or any personal contact with the defendant.

MS. NAVE: I asked him and he said, yes. And then I asked him if he (inaudible)—.

THE COURT: Just a moment, Would counsel approach the bench?"

Record at 2202–03.

■ After reviewing the tape of the doctor's testimony, the court advised the jury:

"There was testimony, Ladies and Gentlemen, or not testimony. There was comment by counsel and, of course, all argument you hear from counsel is comment and the evidence is, for you to consider is that which comes from the witnesses and such exhibits as are admitted through those witnesses. You are the ultimate determiners of the evidence, with regard to the particular issue that has been raised, I would simply, and that is whether there is contact of the defendant with Doctor Mahannah. The following question was asked by the Prosecutor: When was your first contact with the defendant? And to that, Doctor Mahannah replied: I do not have that part of my record here with the actual date, I believe. Now again you are to judge this case on your memory of the evidence as it was presented."

Record at 2215–16. Mason is quite correct when he claims the trial court has the responsibility to "at once require a retraction of any improper statement, or if necessary to insure that the defendant receive a fair trial, instruct the jury to disregard the statement." *Adler v. State* (1961), 242 Ind. 9, 12, 175 N.E.2d 358, 359. However, considering the ambiguous nature of Dr. Mahannah's answer, the court's rereading the question and answer to the jury was an appropriate response. The jury, as the fact finder, was the appropriate entity to resolve the question whether the State's inference from the answer was reasonable.

## VI.

Next, Mason argues the State improperly implied during its cross-examination of Mason that Mason failed to take polygraph examination which law enforcement officials offered. However, as the State points out, the evidence before the jury fails to contain a reference to a polygraph examination. In fact, the trial court ordered the parties not to mention "polygraph". Further, the record is devoid of any objections by Mason to any questions propounded by the State during its cross-examination on the grounds he now argues. Accordingly, there is no error.

## VII.

Mason claims error in that he was "not allowed to present reputation evidence from a particular witness [Kemper] as the trial court was not convinced that its foundation requirements had been met." Appellant's Brief at 42. His argument is without merit inasmuch as Mr. Kemper did in fact testify Mason's reputation for truth and veracity was very good.

Judgment affirmed.

BUCHANAN and YOUNG, JJ., concur.